ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Sep-11  11:01:50
60CV-23-6762
C06D11 : 22 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

| | |
|---|---|
| AUSTIN DANIEL HEFFINGTON, and ALLISON HEFFINGTON, individually, and on behalf of their minor child, P.H. | **PLAINTIFFS** |
| v. | Case No._____ |
| ABBOTT LABORATORIES INC. d/b/a ABBOTT NUTRITION, | **DEFENDANT** |

## COMPLAINT

The Plaintiffs, Austin Daniel Heffington and Allison Heffington ("Plaintiffs"), individually and on behalf of P.H. file this Complaint against Abbott Laboratories, Inc., d/b/a Abbott Nutrition. ("Abbott" or "Defendant"), by and through their attorneys, GILL RAGON OWEN, P.A., for their Complaint against the Defendant and states and alleges as follows:

## INTRODUCTION

1.    Plaintiff Austin Daniel Heffington is the father and next friend of P.H., a minor.

2.    Plaintiff Allison Heffington is the mother and next friend of P.H.

3.    Abbott Laboratories, Inc. manufactures, labels, markets, distributes, and sells infant formulas under the Similac Alimentum brands that have been recalled due to bacterial contamination.

4.    On February 17, 2022, the U.S. Food and Drug Administration ("FDA"), in conjunction with the Center for Disease Control ("CDC"), announced that it was investigating Abbott's Similac Alimentum infant formula products manufactured at Abbott's facility in Sturgis, Michigan ("Sturgis Facility"), following several consumers complaints of *Cronobacter sakazakii* and *Salmonella Newport* contamination. The FDA's advisory notice told consumers to avoid purchasing or using Abbott's Similac Alimentum, and Abbott initiated a voluntary recall of those products.

5.    Abbott later announced that it found evidence of *Cronobacter sakazakii* at its Sturgis Facility.

6.    On February 28, 2022, Abbott also recalled several lots of Similac PM 60/40 infant formula "after learning of the death of an infant who tested positive for *Cronobacter sakazakii*" after consuming formula from a contaminated lot.

7.    Abbott knew about the ongoing risk of contamination and related noncompliance issues at its Sturgis Facility in September of 2021.

8.    Rather than recalling its dangerous infant formula in September of 2021, Abbott Defendant waited until February of 2022—after the FDA publicly announced it was investigating Abbott—before it decided to recall the products.

9.    Abbott's conscious and despicable decision not to recall its contaminated infant formulas caused severe injuries to P.H.

## PARTIES, JURISDICTION &VENUE

10.     Plaintiffs, Austin Daniel Heffington and Allison, are citizens of Pulaski County, Arkansas. Plaintiffs are the parents of P.H., a minor child, who became seriously ill after consuming Abbott's contaminated infant formula.

11.     Abbott Laboratories, Inc., is an Illinois company doing business in Pulaski County, Arkansas, with its principal place of business at 100 Abbott Park Road, Abbott Park, Lake County, Illinois.

12.     This Court has specific personal jurisdiction over Abbott because Abbott has purposefully availed itself of the privileges and benefits of doing business in Arkansas.

13.     Plaintiffs' claims against Abbott are linked to Abbott's conduct in Arkansas.

14.     Plaintiffs' injuries occurred in Arkansas, and Abbott participated in placing the infant formula at issue into the stream of commerce which ultimately found its way to Arkansas.

## FACTUAL BACKGROUND

### A. Abbott's Powdered Infant Formula.

15.     Abbott is an American multinational medical device and health care company.

16.     Abbott was founded 130 years ago, and its products are currently distributed and sold in over 160 countries.

17.     In 2021, Abbott had gross sales of $43.1 billion.

3

18.     Abbott's nutrition division ("Abbott Nutrition") was created in 1903, and, since that time, it has been the number one seller of pediatric nutrition products.

19.     According to the Global Infant Formula Market Report 2021-2025, Abbott is considered one of the most dominant players in the baby formula market, which is expected to be valued at $93 billion by the year 2025.

20.     Abbott, through Abbott Nutrition, was and is engaged in the manufacture, distribution, marketing, and sale of several powdered infant formula brands, including the Similac, Alimentum, EleCare, and Similac PM 60/40 brands that were recalled.

21.     Abbott's products are marketed, distributed, and sold in a uniform manner throughout the United States, and are available for purchase at thousands of retail locations and online through Abbott's website and those of other major retailers.

22.     Abbott holds itself out as a responsible company that is committed to manufacturing nutrition products that are safe for infants to consume.

23.     Abbott emphasizes its commitment to developing and manufacturing nutrition products that are safe for infants to consume.

24.     Despite these and other representations about the safety of its products, Abbott marketed, distributed, and sold contaminated infant formula throughout the United States, including Arkansas.

***B. FDA Investigation of the Sturgis Facility and Product Recalls.***

25.     In September of 2021, the Minnesota Department of Health investigated a case of an infant who was infected with *Cronobacter sakazakii.*

26.     Minnesota state health officials "knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Michigan, and shared this information with the FDA and CDC in September."

27.     The FDA received reports of the illness on September 21, 2021, and the agency notified Abbott Laboratories the following day.

28.     The FDA completed an inspection of the Sturgis Facility on September 24, 2021, and issued five citations for violations of federal food-safety regulations:

   a. Abbott's "personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated."

   b. Abbott "did not maintain a building used in the manufacture, processing, packing or condition holding of infant formula in a clean and sanitary condition.

   c. "An instrument [Abbott] used to measure, regulate, or control a processing parameter was not properly maintained."

   d. Abbott "did not monitor the temperature in a thermal processing equipment at a frequency as is necessary to maintain temperature control."

   e. Abbott did not install a filter capable of retaining particles 0.5 micrometer or smaller when compressed gas is used at a product filling machine."

29.     The FDA also found "several positive *Cronobacter* results" from environmental samples during another inspection of the Sturgis facility, and an FDA

5

review of Abbott's internal documents indicated that Abbott Laboratories previously destroyed infant formulas in connection with the contamination issue.

30.    Additional illnesses were reported in the months of November, December, and January, and all four infants consumed powdered infant formula manufactured at Abbott's Sturgis Facility. All four infants were hospitalized, and two infants have died.

31.    On February 17, 2022, the FDA announced that it was investigating complaints of infant illnesses related to products manufactured at Abbott's Sturgis Facility, including Abbott's Similac Alimentum products following several consumers complaints of *Cronobacter sakazakii* and *Salmonella Newport* contamination.

32.    The FDA's advisory notice alerted consumers to avoid purchasing or using Abbott's Similac Alimentum products.

33.    After the FDA made its public announcement, Abbott recalled the Similac Alimentum brand products.

34.    This first recall came almost five months after it learned about the first reported illness related to Abbott's infant formula.

35.    In conjunction with the first recall, Abbott announced that it had found evidence of *Cronobacter sakazakii* at the Sturgis Facility, but affirmatively represented it had been found only in non-product-contact areas. This public statement was directly contradicted by the FDA's inspection report issued March 18, 2022, which determine that Abbott had found *Cronobacter* both in the production areas, and in the finished formula itself.

6

36.    *Cronobacter* and *Salmonella* bacteria can cause meningitis, bowel damage, and deadly infections.

37.    In or around September of 2021, Plaintiffs' infant child, P.H. consumed contaminated infant formula produced by Abbott. As a direct and proximate cause of consuming said recalled infant formula, P.H., developed a severe Salmonella infection. This infection progressed into spinal meningitis and required extended hospitalization and extensive medical treatment.

## CAUSES OF ACTION

### Count I: Strict Liability – Failure to Warn

1.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

2.    Abbott is strictly liable for the damages caused by its products.

3.    At all times relevant to this action, Abbott was engaged in the business of manufacturing, formulating, designing, marketing, testing, promoting, selling, distributing, and otherwise introducing contaminated Similac Alimentum formula.

4.    At all times relevant to this action, Abbott knew or should have known that consumption of its contaminated Similac Alimentum formula significantly increased the risk of becoming infected with *Cronobacter* or *Salmonella*.

5.    Had Plaintiffs and/or their health care providers, received warning or instruction from Abbott regarding its contaminated Similac Alimentum formula, they would not have allowed P.H. to be fed with said contaminated formula.

6.     Plaintiffs were unaware that Abbott's Similac Alimentum formula was contaminated and significantly increased P.H.'s risk of becoming infected with *Cronobacter* or *Salmonella*.

7.     As the direct and proximate result of the reasonably foreseeable use of Abbott's contaminated formula, Plaintiffs and P.H. have suffered damages for which they are entitled to recovery.

<u>**Count II: Strict Liability – Design and Manufacturing Defect**</u>

8.     Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

9.     Abbott is strictly liable for the damages caused by its products.

10.     At all times relevant to this action, Abbott was engaged in the business of manufacturing formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing contaminated Similac Alimentum formula into the stream of interstate commerce throughout the United States.

11.     At all times relevant to this action, Abbott's contaminated formula was expected to and did, in fact, reach Plaintiffs without a substantial change in its condition.

12.     At all times relevant to this action, the contaminated Similac Alimentum formula was defectively and improperly manufactured and designed by Abbott in that when the infant formula left the hands of Abbott, its foreseeable risks far outweighed the benefits associated with its design and formulation.

13.    At all times relevant to this action, the contaminated Similac Alimentum formula was defectively manufactured and designed by Abbott in that its design and formulation was more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

14.    At all times relevant to this action, the contaminated Similac Alimentum formula presented significant risks to the health and safety of consumers that far outweighed the risks posed by other products on the market used for the same purpose.

15.    At all times relevant to this action, a Abbott could have employed a reasonable and safer alternative design to manufacture and sell infant formula with the same purpose as the contaminated Similac Alimentum formula.

16.    Despite knowledge of this reasonable and safer alternative design, Abbott failed to alter the infant formulas' designs and formulation.

17.    The magnitude of the danger created by the contaminated infant formula far outweighed the costs associated with using an alternative, safer design.

18.    At all times relevant to this action, Abbott's contaminated Similac Alimentum formula deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous unfit for its intended or reasonably foreseeable uses.

19.    As a direct and proximate result of the defective design and manufacture of the contaminated Similac Alimentum formula, Abbott manufactured, formulated, marketed, tested, promoted, sold, distributed, and introduced into the stream of

commerce, Plaintiffs and P.H. have suffered damages for which they are entitled to recovery.

## Count III: Negligence

20.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

21.    At all times relevant to this action, Abbott manufactured, designed, formulated, marketed, tested, promoted, supplied, sold, and distributed its infant formula in the regular course of business.

22.    At all times relevant to this action, Abbott had a duty to act with reasonable care in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and sale of its formula.

23.    At all times relevant to this action, Abbott had a duty to act with reasonable care and to warn Plaintiff Holdridge and the consuming public of the risk, dangers, and adverse side effects of its contaminated Similac Alimentum powdered formula.

24.    At all times relevant to this action, Abbott knew or should have known that its contaminated Similac Alimentum formula was unreasonably dangerous and defective when used in a reasonably foreseeable manner.

25.    Abbott breached its duty to Plaintiffs and was otherwise negligent in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and sale of the powdered infant formula utilized by

Plaintiffs, which was inherently dangerous and defective and unfit and unsafe for its intended and reasonably foreseeable use.

26.    As a direct and proximate result of Abbott's negligence, Plaintiffs and P.H. have suffered injuries and damages for which they are entitled to recovery.

## Count IV: Fraud

27.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

28.    At all times relevant to this action, Abbott intentionally, willfully, or recklessly, with the intent to deceive, misrepresented or concealed material facts to consumers and users, including Plaintiffs.

29.    At all times relevant to this action, Abbott misrepresented or concealed material facts concerning the contaminated Similac Alimentum formula to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

30.    Abbott, through its advertisements, knowingly misrepresented to Plaintiffs that its contaminated Similac Alimentum formula was safe to consume.

31.    Abbott intentionally failed to disclose that its Similac Alimentum formula was contaminated.

32.    Despite knowing about the contaminated nature of its Similac Alimentum formula and its likelihood to increase the risk of becoming infected with *Cronobacter* or *Salmonella*, Abbott falsely marketed, advertised, labeled, and sold its contaminated Similac Alimentum formula as safe for public use and consumption.

33.    At all times relevant to this action, Abbott actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive Plaintiffs, and with the intent that consumers, including Plaintiffs, would purchase and use the infant formula.

34.    At all times relevant to this action, the consuming public, including Plaintiffs, would not have purchased or used the contaminated Similac Alimentum formula if they had been informed of the risks associated with its use and consumption.

35.    At all times relevant to this action, Plaintiffs relied on Abbott's misrepresentations concerning the safety of its infant formula when purchasing Similac Alimentum formula and feeding it to P.H.

36.    Plaintiffs' reliance was reasonable and justified.

37.    As a direct and proximate result of Abbott's fraudulent conduct concerning the contaminated Similac Alimentum formula, Plaintiffs and P.H. have suffered  from injuries and damages for which they are entitled to recovery.

## Count V: Negligent Misrepresentation

38.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

39.    At all times relevant to this action, the Abbott was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and distributing infant formula.

40.    At all times relevant to this action, Abbott had a duty to disclose to consumers and the public material facts about its infant formula, including the material facts that its contaminated Similac Alimentum formula was unsafe to consume and that consuming it would substantially increase the risk of becoming infected with *Cronobacter* or *Salmonella*.

41.    Through its acts and omissions in advertising, promoting, labeling, and otherwise, Abbott made public misrepresentations of material facts to and concealed material facts from consumers including Plaintiffs concerning the character, safety, and effectiveness of its contaminated Similac Alimentum formula.

42.    Had Abbott disclosed true and accurate material facts concerning the risks of the use of its contaminated Similac Alimentum formula, in particular the risk of becoming infected with *Cronobacter* or *Salmonella*, Plaintiffs would not have purchased, received, used and/or allowed P.H. to be fed the infant formula.

43.    Plaintiffs reliance upon Abbott's misrepresentations and omissions were justified and reasonable because, among other things, those misrepresentations and omissions were made by individuals and entities who were in a position to know the material facts concerning Abbott's contaminated Similac Alimentum formula and the connection between the contaminated infant formula and the risk of becoming infected with *Cronobacter* or *Salmonella*, while Plaintiffs were not in a position to know these material facts; and because Abbott failed to warn or otherwise provide notice to the consuming public, including Plaintiffs and/or their child's healthcare providers, as to the risks of its contaminated Similac Alimentum formula, thereby

inducing Plaintiffs to purchase, use, receive and/or otherwise allow their child to be fed with contaminated infant formula in lieu of safer alternatives and in ways that created unreasonably dangerous risks to P.H.'s health.

44.    At all times relevant to this action, Abbott's corporate officers, directors, and managing agents knew of and ratified the acts of Abbott as alleged herein.

45.    As a direct and proximate result of Abbott's negligent misrepresentations and omissions concerning the risks and benefits of its contaminated Similac Alimentum formula, Plaintiffs and P.H. have suffered from injuries and damages for which they are entitled to recovery.

### Count VI: Breach of Express Warranty

46.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

47.    Abbott, through its advertising and promotional materials, expressly warranted and affirmed that its infant formula was safe for the uses for which they were intended and for uses which were reasonably foreseeable. Abbott's express warranties extended beyond delivery of the infant formula and expressly warranted the future performance of the formula.

48.    Abbott, through its advertisements, made express warranties to Plaintiffs and the public that its formula was safe to use and consume.

49.    At all times relevant to this action, Abbott breached these express warranties in that its infant formula was unsafe for use and consumption because

14

the powders were contaminated and therefore significantly increased the risk of becoming infected with *Cronobacter* or *Salmonella*.

50.    At all times relevant to this action, Abbott had knowledge of the hazards and health risks posed by using and consuming its contaminated Similac Alimentum formula.

51.    At all times relevant to this action, Abbott willfully failed to disclose the defects and health risks of its contaminated Similac Alimentum formula to Plaintiffs, their minor child's healthcare providers and the consuming public.

52.    At all times relevant to this action, in reliance upon the express warranties made by Abbott, Plaintiffs purchased, received, used and/or allowed Abbott's contaminated powdered infant formula to be fed to P.H. believing that it was safe.

53.    As a direct and proximate result of Abbott's express warranties concerning its contaminated Similac Alimentum formula, Plaintiffs and P.H. have suffered from injuries and damages for which they are entitled to recovery.

## Count VII: Breach of Implied Warranty

54.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

55.    At the time Abbott manufactured, marketed, labeled, promoted, distributed, and sold its contaminated Similac Alimentum formula, Abbott knew of the uses for which the infant formula was intended, and impliedly warranted the

formula was merchantable and fit for the ordinary purposes for which it was intended.

56. At the time it left Abbott's possession, the contaminated Similac Alimentum formula was not merchantable or fit for its ordinary purpose because it had a propensity to lead to the serious personal injuries described herein.

57. Members of the consuming public, including consumers such as Plaintiffs and P.H. were intended beneficiaries and third-party beneficiaries of this warranty.

58. Plaintiffs reasonably relied on representations that the infant formula safe and free of defects.

59. Abbott's breach of the implied warranty of merchantability and fitness for a particular purpose was the direct and proximate cause of Plaintiffs' and P.H.'s, injuries.

60. As a direct and proximate result of Abbott's breach implied warranties concerning its contaminated Similac Alimentum formula, Plaintiffs and P.H. have suffered injuries and damages for which they are entitled to recovery.

## Count VIII: Violation of the Arkansas Deceptive Trade Practices Act

61. Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

62. Plaintiffs are consumers and purchased, received and/or used Abbott's contaminated Similac Alimentum formula primarily for personal use and thereby

suffered ascertainable losses, including mental anguish, as a result of Abbott's acts and omissions in violation of the applicable consumer protection laws.

63.    Unfair methods of competition or deceptive acts or practices that were proscribed by law include the following:

    a. Representing that goods or services had characteristics, ingredients, user benefits, or qualities that they did not have;

    b. Advertising goods or services with the intent not to sell them as advertised;

    c. Over-promoting infant formulas, including but not limited to overpromoting their safety; and

    d. Engaging in fraudulent or deceptive conduct that created a likelihood of confusion or misunderstanding.

64.    Abbott violated consumer protection laws through their use of false and misleading representations and omissions of material facts relating to the safety of its contaminated Similac Alimentum formula.

65.    Abbott uniformly communicated the purported benefits of its contaminated Similac Alimentum formula while failing to disclose the serious and dangerous risk of using these products and the true state of the formula's safety, efficacy, and usefulness.

66.    Abbott made these representations to consumers, including Plaintiffs, in the marketing and advertising described herein. Abbott's conduct in connection with its contaminated formula was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Abbott misleadingly, falsely, and deceptively represented and omitted numerous material facts regarding, among

other things, the utility, benefits, safety, efficacy, and advantages of its contaminated Similac Alimentum formula.

67.    Additionally, Abbott's violations of these consumer protection laws were committed knowingly and intentionally; therefore, Plaintiffs should recover, in addition to the actual damages, treble damages as allowed by law.

68.    Abbott's violation of consumer protection laws concerning its contaminated Similac Alimentum formula, was a producing cause of Plaintiffs' and P.H.'s, injuries and damages, for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, treble damages, interest, costs, and attorneys' fees.

## Count IX: Fraudulent Concealment

69.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

70.    Prior to Plaintiffs' purchase, receipt and/or use of the contaminated Similac Alimentum formula and during the period in which the infant formula was purchased, received and/or used, Abbott fraudulently suppressed material information regarding the safety and efficacy of the infant formula, including but not limited to information the infant formula was contaminated. The fraudulent misrepresentations and fraudulent concealment described throughout this Complaint were intentional and intended to maintain and increase the sales volumes of Abbott's formula.

71.    Abbott intentionally concealed safety issues with its contaminated Similac Alimentum formula in order to induce consumers, including Plaintiffs, to purchase, receive, obtain and/or use the infant formula.

72.    At the time Abbott concealed the fact that the contaminated Similac Alimentum formula was not safe as designed and marketed, it was under a duty to communicate this information to the general public in such a manner that the general public could appreciate the risks associated with using the infant formula.

73.    Plaintiffs relied upon Abbott's false and fraudulent misrepresentations and concealments regarding the safety of its infant formula.

74.    As a direct and proximate result of Abbott's malicious and intentional concealment of material and information, Abbott caused or significantly contributed to Plaintiffs' and P.H.'s injuries.

75.    Abbott furthered this fraudulent concealment through a continued and systematic failure to disclose information to Plaintiffs and the public.

76.    Abbott's acts before, during, and after the acts and omissions causing Plaintiffs' and P.H.'s, injuries prevented Plaintiffs from discovering the injuries and/or the causes thereof.

77.    Abbott's conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Abbott must have realized was dangerous, needless, and reckless, without regard to the consequences or the rights and safety of Plaintiffs and P.H.

78.     As a direct and proximate result of Abbott's fraudulent concealment concerning the contaminated Similac Alimentum formula,  Plaintiffs and P.H. have suffered  injuries and damages for which they are entitled to recovery.

### Count X: Gross Negligence

79.     Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

80.     Abbott risked the lives of consumers and users of its infant formula, including P.H., with knowledge of the infant formula's contamination and safety problems, and suppressed this knowledge from Plaintiffs and the general public.

81.     Abbott made conscious decisions not to redesign, relabel, or withdraw its contaminated Similac Alimentum formula, and not to warn or inform Plaintiffs or the unsuspecting consuming public about the risks posed by its contaminated Similac Alimentum formula.

82.     Abbott's conduct  was outrageous and involved an extreme risk of harm to others.

83.     Despite its knowledge of this extreme risk of harm, Abbott nevertheless persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of the rights, safety, or welfare of others.

84.     Abbott's extreme and outrageous conduct warrants exemplary damages.

85.     Abbott's gross negligence was a proximate cause of Plaintiffs' and P.H.'s, injuries and damages. Accordingly, Abbott was grossly negligent, and Plaintiffs and

P.H. are entitled to recover exemplary damages in an amount sufficient to punish Abbott and deter others from engaging in similar conduct.

<u>**Count XI: Unjust Enrichment**</u>

86.    Plaintiffs restate and reallege the allegations in each paragraph of this Complaint as if set forth fully herein.

87.    Abbott profited unjustly from the sale of contaminated Similac Alimentum formula as a result of concealing its knowledge that the infant formula posed a serious health risk to consumers.

88.    As a proximate result of their wrongful acts and omissions described herein, and as a result of their ill-gotten benefits and profits, Abbott has been unjustly enriched at the expense of Plaintiffs and other purchasers and/or users of the contaminated Similac Alimentum formula.

89.    The circumstances as described herein are such that it would be inequitable for Abbott to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiffs and the other purchasers and users of contaminated Similac Alimentum formula.

90.    Plaintiffs are entitled to restitution of the amount of Abbott's ill-gotten gains, benefits, and profits, including interest, resulting from the unlawful, unjust, and inequitable conduct described herein.

91.    Accordingly, Plaintiffs seek an order establishing Abbott as the constructive trustee of the gains, benefits, and profits that served to unjustly enrich it, together with interest during the period in which Abbott has retained such benefits

and profits and requiring Abbott to disgorge those profits to Plaintiffs and the other

purchasers of the contaminated Similac Alimentum formula in a manner to be

determined by the Court.

### JURY DEMAND

92.    Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs pray for judgment against Defendant for: in an

amount to be determined at trial, for:

      a.  actual damages in an amount to be determined at trial;

      b.  exemplary damages sufficient to punish Defendant Abbot and deter it and others from future wrongful conduct;

      e.  treble damages as allowed by law;

      f.  attorneys' fees, costs and expenses, and pre- and post-judgment interest as allowed by law; and

      g.  all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**WHITE HALL FOOD MART, LLC**
by its attorneys:

/s/ Aaron M. Heffington
Aaron M. Heffington, Ark. Bar No. 2013227
GILL RAGON OWEN, P.A.
425 West Capitol Avenue, Suite 3800
Little Rock, Arkansas  72201
(501) 376-3800 // (501) 372-3359 fax
heffington@gill-law.com